PEOPLE, PLAINTIFF AND APPELLANT, *v.* SOTO, ALIAS PANTA-LEÓN, DEFENDANT- AND APPELLEE.

No. 1182.—Decided June 26, 1918.

APPEAL from the District Court of Mayagüez in a Prosecution for Murder in the Second Degree.

NOTE.—This dissenting opinion is to be considered as following the majority opinion of the court in the same case, reported at page 399 of this volume.

DISSENTING OPINION OF MR. JUSTICE ALDREY IN WHICH MR. CHIEF JUSTICE HERNÁNDEZ CONCURS.

We agree with the majority opinion of the court in this case that an order made by the trial court either granting or denying a new trial will not be disturbed on appeal unless an abuse of discretion is made manifest. This principle is confirmed in the cited case of *People* v. *Mallicoot,* 149, Pac. 1001, in which a new trial had been denied. In that case it was said also that in granting a new trial the court should believe that the verdict was not sustained by the evidence and that if it were allowed to stand, unjust punishment would be imposed. For this reason in the case of *People* v. *Lum Yit,* 83 Cal. 130, cited in the majority opinion, we would have sustained the granting of a new trial because the verdict of guilty was really contrary to the evidence, for the commission of the crime was not shown. In the case of *People* v. *Baker,* 39 Cal. 687, cited in the foregoing case, the facts are not stated and it is said only that although there is a strong preponderance of evidence in favor of the verdict, it cannot be held that there was abuse of discretion.

We agree also that when the evidence is not sufficient to support the verdict, or when the verdict is contrary to the evidence, it is not only the right but the duty of the trial court to grant a new trial.

The real point, then, on which we disagree with the majority of the justices in this case is that they do not understand from the transcript of the record that there was abuse of discretion in granting a new trial to Pablo Soto Denizac, while we believe, on the contrary, that the evidence shows that in this case the court abused the authority given it by subdivision 6 of section 303 of the Code of Criminal Procedure to grant a new trial when the verdict is contrary to the evidence, for in this case the verdict was not contrary to the evidence. In this aspect of the case, and as each case has its own special color, we will review the evidence in order to show whether it supports the verdict.

Pablo Soto Denizac was charged by the district attorney of Mayagüez with having murdered Anselmo Mercado early in the evening of Saturday, May 20, 1916. The jury found him guilty of murder in the second degree, but on motion of the attorney for the accused the court set aside the verdict and granted him a new trial on the ground that the evidence was insufficient to support the verdict because it was circumstantial and only the knife which was found at the place where the dead body of Mercado was discovered tended to connect the accused with the crime, the evidence of other circumstances, such as the conduct of the accused, his contradictory statements and the motive, being of little value; that although the prosecution showed that the deceased should have had three or four dollars in his possession at the time of his death and the condition of his clothing demonstrated that the money was taken from him, it did not prove that the accused had knowledge that the money was in the possession of the deceased, and that there was no proof that a single cent was found in the possession of the accused after the crime was committed. The trial court ad-

mits that the evidence for the prosecution tended to show that upon arriving at his home five days after the crime was committed the accused sought to avoid being seen by the police and that this circumstance would be very important if there had been any direct evidence connecting him with the crime, but holds that in the absence of such evidence this circumstance is of little value. The trial court adds that the evidence for the prosecution showed that the accused was at the Eureka Central of Mayagüez until 6 P. M. of the day on which the crime was committed, which would make it very difficult for him to have been at the scene of the crime between seven and eight of the same evening when the crime must have been committed, for the accused had no money with which to hire a vehicle to convey him from one place to another and there was no proof that he was conveyed in any manner. Finally the trial court adds that the only circumstance which tended to connect the accused with the crime was the finding of the knife near the body of the deceased on the evening of his death; that the prosecution introduced direct evidence of the *corpus delicti* and of the possession of the said knife by the accused on several occasions, the most recent occasion being seven or eight days before the crime was committed, but that the evidence that the crime was committed with the said knife was circumstantial and hypothetical because the fact that it had been in the possession of the accused seven or eight days before the crime was committed did not prove that he was guilty of the crime, for this circumstance considered alone has no value whatever. The accused might have lost the knife during the seven or eight days or it might have been stolen from him, etc.

When the prosecution rested at the trial the court overruled a motion of the defense that a peremptory verdict of acquittal be directed because the crime had not been proved. Thereupon the defense examined some witnesses, the jury found a verdict of guilty and on motion of the attorney for

the defense the court granted a new trial. From that ruling the district attorney raised this appeal, which was prosecuted here by the *fiscal* of the Supreme Court.

The attorney for the defendant prays in his brief that the appeal be dismissed because he was not furnished with a copy of the transcript and because the brief of the prosecution does not contain a specific assignment of the errors attributed to the trial court in its ruling. That prayer is not granted because we know of no statute which requires such copy to be furnished in criminal cases and because we do not find that the second ground is justified; nor would we dismiss this appeal on the said ground, particularly as it involves the crime of murder. Hence we will consider the case on its merits.

Anselmo Mercado, the victim in this case, was found dead in the Callejón de los Perros on the road to Miradero, or Quemado, near the Yournet bridge and near the place known as Yagaretas, on a Saturday after he had collected, at about 5 P. M., his wages of $3.79 from the Rochelaise plantation, where he had gone from his home without carrying any weapon. He had a wound in his breast which severed the third, fourth and fifth ribs of the left side from the sternum and pierced the heart, causing immediate death. The wound must have been inflicted with an edged and pointed instrument like the knife which, stained with blood, was found near the body. The body of the deceased bore no signs of a struggle and no money was found in his clothing, but the left trousers pocket was turned outward, the right trousers pocket partly so and the watch-pocket was empty and torn.

Although the defense alleges that the *corpus delicti* was not proved in this case because there was no evidence to show beyond a reasonable doubt that the death of Mercado was caused by a hand other than his own, yet we are of the opinion that the jury was justified in finding that a crime had been committed, because there was found near the body

a bloodstained knife which did not belong to Mercado and with which the wound which deprived him of life could have been inflicted; because the wound was so violent that it severed the cartilage of three ribs and penetrated the heart, and because, although it is not necessary to prove the motive for a crime (*People* v. *Rivera,* 25 P. R. R. 776), the facts that the body of Mercado showed no signs of a struggle, that the money which he had collected a short time before his death was not found, and that his trousers pockets were in the condition stated, are circumstances sufficient to justify the finding that another and criminal hand killed him for the purpose of robbing him, for although he was a laborer it was probable that he had money, as Saturdays are generally the days on which laborers are paid.

There was no direct evidence of the crime. There was no evidence of any kind that the accused and Mercado were acquainted with each other and therefore may have had some ill feeling toward each other. In fact, the main evidence in this case was the finding of the bloodstained knife near the body of Mercado, the possibility that the crime was committed with an instrument of this kind and the fact that the knife belonged to the accused.

As to the ownership of the knife, the proof was so clear that we can not believe that anyone would doubt that the knife belonged to Pablo Soto Denizac for some months before the death of Mercado, and that on many occasions during that time it was seen in his possession, the last time being on May 16, when he left the house of Aquino four days before the death of Mercado and not seven or eight days before, as said by the judge of the trial court in his written opinion on which the granting of a new trial was based. The knife is of such a kind that the maker of it recognized it and remembered that he exchanged it with the accused for another. It has particular marks by which the witnesses were able to identify it and the wife of the accused identified it among ten or twelve knives shown to her to-

gether. It is true that during the investigation the district attorney took possession of another knife which some time before the commission of the crime charged in this case the accused had delivered to a kinsman of his, and that the defense introduced this knife in evidence in order to show that it was the only knife that the accused had had, but the evidence regarding the other knife was entirely convincing and the jury believed it.

Hence the important starting point in this case is that the knife found near the body belonged to Pablo Soto Denizac and he had it in his possession four days before the death of Mercado. It is true, as said by the judge of the lower court, that this is the only fact which tends to connect the accused with the crime, but in the circumstances of the case we believe that it is so strong that when considered in conjunction with the other facts it should produce a conviction of the guilt of the accused unless it had been proved that it was physically impossible for him to have committed the crime.

Although it is a supposition that the crime was committed with that knife on account of the shape and size of the wound inflicted upon Mercado, the supposition acquires such a strong degree of possibility by reason of the fact that the bloodstained knife was found near the body immediately after the crime was committed—for the prosecution showed that when the body was lifted it was yet completely flexible—that we may be certain beyond a reasonable doubt that the killing was done with that knife. In view of this conclusion and it having been shown that the accused had the knife in his possession four days before the death of Mercado, although the accused testified that the knife had never been in his possession, we are forced to the conclusion that these two facts are strong evidence of his guilt. The denial of the accused that he had ever had the knife refutes the suggestion that, the contrary being proved, he may have lost the knife or had it stolen from him.

And there are other circumstances which strengthen the theory that the accused is guilty of this crime.

The accused left his home about May 7 to look for work. Until May 17, when he arrived at the Eureka Central of Mayagüez, he was in San Germán without work and without money. From the seventeenth to Saturday the twentieth he worked in the Eureka Central only half of one day and less than half of another, for which he was paid thirty-five cents. He worked no more and on the twenty-fourth returned to the home of his concubine. He asked a neighbor to advise him if the police should pass so that he might conceal himself because on the road near Yagaretas he had been put upon by some men who knocked his knife out of his hand, whereupon he attacked with his cane-knife and knocked one of them down. In his voluntary testimony he acknowledged that he lied when he said at first that he was a peddler. The falsity of his testimony on many points was shown, for while he declared that on the night of Saturday the twentieth the machinery of the Eureka Central, where he was working, was not running and he slept in the cane-carrier called "Ladrón," it was shown that on that night the said machinery was running and therefore no one could have slept in that place. He did not pay for what he ate at the Eureka, albeit on Saturday he offered to pay the debt. Furthermore, it is a significant fact that when he was arrested on the day following his return to his home, before knowing the reason for his arrest he sought to advise his brother-in-law at the Eureka Central to prepare his witnesses while he could not have meant witnesses in the case of the encounter that he said he had had in Yagaretas with some other men, inasmuch as he admitted that occurrence, but must have meant witnesses for this case.

The foregoing and some further details, which we shall not state because they are many and of minor importance, strengthen the impression that the accused committed the crime with which he is charged, and the fact that the prose-

cution did not prove that the accused had a single cent or knew that the deceased had money does not weaken in any way the evidence against the accused, for he was arrested five days after the crime was committed and as Mercado was killed on a Saturday evening it might be presumed that he had money for the reason that on that day laborers are generally paid.

After considering these circumstances the only fact that can refute the theory of the guilt of the accused is that it was physically impossible for him to commit the crime. This plea was set up by the defense and the trial court supported it in saying that it was very difficult for the accused to have been at the Eureka Central at six o'clock and at the scene of the crime at seven to eight.

It is true that one witness testified that he saw the accused at the Eureka Central between half-past five and 6 P. M. of Saturday May 20, because the whistle is usually blown at that hour to call the men to work; that another testified that to go from the Eureka to Mayagüez on foot takes about two hours, and that another testified that the scene of the crime is a half-hour's walk from Mayagüez, a total of two hours and a half; but what does not appear so clearly is the time of the death of Mercado, for while his father said that he found the body between eight and half-past eight, he could not be sure of the hour because he had no watch. He testified that he then went to look for Señó Ramón and returned with him to the place where the body was, after which he went to Mayagüez to report the matter to the authorities. The chief of police testified that he saw the father of the deceased in the district attorney's office in Mayagüez at half-past eight and the court deduced from this that the death must have occurred between seven and eight. On the other hand, the district attorney of Mayagüez said that he was at home that night when the father of Mercado arrived at about ten o'clock; that immediately thereafter he went to the police barracks and with the chief, another police-

man and the father of Mercado started in a carriage to the scene of the crime, where they arrived within about twenty minutes, and that it was a quarter-past ten by his watch when they took up the body. The chief of police also testified to this hour.

Therefore the time of the death of Mercado is not exactly fixed. It may have occurred between seven and eight although one witness said that he passed the place between these hours and did not see Mercado. Or it may have occurred about nine if, as the district attorney said, the father of the deceased came to his house at about ten, for there would have been time for him to go for Señó Ramón, return to the place and be in Mayagüez at ten.

If the death occurred at about nine, although the accused was at the Eureka Central at six he would have had time to get to the place of the crime at about half-past eight. It appears that the jury adjusted the conflict in the evidence regarding the time when the father of the deceased arrived in Mayagüez in the sense that it was nearly ten o'clock and therefore that the death occurred at about nine. At any rate, even admitting as most favorable to the accused that the crime was committed between seven and eight of the evening, and although in that case he did not have the two hours and a half usually needed to get from the Eureka Central to the place of the crime, it was not physically impossible for him to have made the journey in less than two hours and a half. That is the usual time required, but it is possible that he may have found some means of making the journey in less time. If the distance had been such that by no means known to man at present could he have traveled that distance in less than two hours and a half, then notwithstanding all the other circumstantial evidence it would have to be concluded that the accused could not have committed the crime.

It is to be observed that although in examining the witnesses no searching investigation was made regarding the

time in order to fix exactly the hour of the killing of Mercado, the defense raised before the jury the question that we are now discussing, for in his charge to the jury the judge said that the theory of the defense was that the accused was absolutely innocent because he was not at the scene of the crime, but at another place so far away that he could not have participated in the crime, and attention was called to the fact that evidence had been introduced tending to prove that alibi, as well as that it was the province of the jury to decide that question. And, in fact, the jury did decide it by finding the accused guilty.

After hearing the evidence for the prosecution the court overruled the defendant's motion that a peremptory verdict of not guilty be directed, and this shows that the court understood that if the jury believed the evidence it was sufficient to support a verdict of guilty. The evidence introduced by the defense after this only tended to contradict some of the evidence for the prosecution and to support the testimony of a brother-in-law of the accused to the effect that the accused was attending a circus at the Eureka from eight to half-past eight of the night of the crime. On this evidence the court granted a new trial. Should its ruling be sustained?

We understand that by its verdict of guilty the jury decided many questions, among them that the knife with which the crime was committed belonged to the accused notwithstanding his denial; that that fact with others shows by inference that the accused was the author of the death of Mercado, and that although he was seen at the Eureka from half-past five to six of the evening and it takes two hours and a half to go from there to the scene of the crime, it was not physically impossible for him to have done so. This last question was specially submitted to the jury and they decided it. How, then, can the judge, against the unanimous opinion of twelve judges of the facts, say that the twelve were mistaken in deciding that the accused could have com-

mitted the crime and did commit it, when, as we have said before, it was not physically impossible for the accused to have made the journey from the Eureka to the place of the crime in something less than two hours and a half?

If a new trial had been denied and the accused had appealed to this court on the ground that the evidence was insufficient, undoubtedly we should have held that there was sufficient circumstantial evidence to support the verdict of guilty. How, then, can we sustain the judge in holding, against the opinions of twelve others, that the evidence was insufficient and in granting a new trial on that ground when on an appeal from a judgment of conviction we would have held the contrary?

We believe that the verdict of guilty found by the jury was not contrary to the evidence and that the lower court erred manifestly in holding the contrary and in granting a new trial on that ground.

Although the motion for a new trial was based also on errors of law committed by the court during the trial, the court did not base its ruling on them, the defense did not discuss them in its brief, nor can we, after careful consideration, hold that there were such errors.

The order granting a new trial should be reversed.